UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Max Reed II,

        Plaintiff

v.

Brown, et al.,

        Defendants

Case No. 2:23-cv-00331-CDS-BNW

**Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment**

[ECF Nos. 23, 27]

      Plaintiff Max Reed II, who is incarcerated in the custody of the Nevada Department of Corrections (NDOC), brings this complaint under 42 U.S.C. § 1983 against defendants Tyquan Brown and Grace Moran for events that took place while Reed was incarcerated at Southern Desert Correctional Center (SDCC). Compl., ECF No. 1-1 at 1.[1] Reed alleges that defendants intentionally deprived him of his property in violation of the Fourteenth Amendment. *Id.* at 4, 9. Defendants filed a motion for summary judgment on June 6, 2024. Defs.' mot. for summ. j., ECF No. 23. The motion is fully briefed. *See* Pl.'s opp'n, ECF No. 26; Defs.' reply, ECF No. 28. Reed subsequently filed a cross motion for summary judgment. Pl.'s mot. for summ. j., ECF No. 27.[2] For the reasons herein, I grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

I.      Background[3]

      Reed alleges that on April 15, 2022, Brown, a correctional officer at SDCC, took him and placed him in administrative segregation. ECF No. 1-1 at 4. During "roll up," when Reed was packing up his personal belongings, Brown allegedly confiscated "a large amount of [Reed's] authorized property." *Id.* Brown provided Reed with three documents that indicated Reed had

---

[1] Reed currently resides at High Desert State Prison ("HDSP"). ECF No. 1-1 at 1.
[2] Reed's motion for summary judgment is identical to his opposition to defendants' motion for summary judgment.
[3] Unless otherwise noted, the court only cites to the plaintiff's complaint (ECF No. 1-1) to provide context to this action, and does not indicate a finding of fact.

unauthorized property but did not provide Reed with any more information. *Id.* On April 23, 2022, Reed filed an informal grievance stating that Brown took his personal property in violation of the administrative regulations. *Id.* at 4. Prison officials did not respond to this grievance until August 22, 2022, which is after the expiration of the forty-five-day required response time. *Id.* at 5. On July 8, 2022, Reed filed a first level grievance concerning Brown taking his personal property and told the reviewing prison officials that he had not received a response to his informal grievance. *Id.* On August 18, 2022, the reviewing prison official responded to the first level grievance. *Id.* Reed argues that the reviewing prison official improperly screened his first level grievance. *Id.* at 5. Four days later, on August 22, 2022, Reed filed another first level grievance, which was responded to on September 20, 2022. *Id.* at 6. Reed then filed a second level grievance on August 21, 2022. *Id.*

Prison officials released Reed from administrative segregation on July 28, 2022. *Id.* at 8. On August 10, 2022, Reed filed an inmate request form seeking the return of the property taken by Brown. *Id.* Reed alleges that on August 15, 2022, Moran responded to his request and stated that Reed had been in violation of administrative regulations. *Id.* At the time of the filing of the complaint, Reed alleges that prison officials had not yet returned his property. *Id.* Reed claims that Moran had a history of violating his property rights because, on one other occasion, she accused him of having another inmate's fan. *Id.* at 10. Reed was transferred from SDCC to HDSP on November 4, 2022. *Id.* At that time, Reed alleges that Moran improperly confiscated a bag and two of his appliances. *Id.* In response to the confiscation, Reed filed an informal grievance. *Id.* at 10. Reed also wrote a "criminal complaint" that he filed with the Las Vegas Metropolitan Police Department (LVMPD), asking to press charges against Moran for stealing his property. *Id.* at 10–11. At the time of the filing of his complaint, and despite attempts to follow up, Reed had not received any information from the police or the district attorney. *Id.* at 11. On November 22, 2022, Reed mailed a letter to NDOC Deputy Director Johnson about Moran's conduct, and he also filed a kite with the warden of HDSP concerning "staff misconduct." *Id.* at 12. In his kite, Reed

said that an HDSP official, Wallace, attempted to cover up Moran's misconduct. *Id.* at 13. Although he requested to speak with a supervisor about this incident, Reed alleges that he has not received a response to his kite. *Id.*

II.  Legal standard

   A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

B. Prison Litigation Reform Act (PLRA)

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA)." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). "To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Id.* at 204. The PLRA's exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

In Nevada, the remedies available to inmates are promulgated under Nevada Department of Corrections Administrative Regulation 740 (AR 740). Def.'s Ex. C, ECF No. 23-3. AR 740's purpose is to "set forth the requirements and procedures of the administrative process that [NDOC] offenders must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." ECF No. 23-3 at 2. "An offender whose grievance is denied in its entirety may appeal the grievance to the next level." *Id.* at 6. The grievance structure is essentially a multi-level dispute resolution mechanism, under which an offender must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *See generally id.* It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or submitting an Offender Request Form." *Id.* at 11. Once an offender has exhausted alternative means, he may file an informal grievance. *Id.* If that fails to provide the requested relief, the offender may file a first-level grievance, and if that fails, a second-level grievance. *Id.* at 11–16. An offender exhausts his administrative remedies either after a denial of the second-level grievance, or if the grievance is granted at any level. *Id.* at 6.

III.     Discussion

    A.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment, arguing that Reed failed to exhaust his administrative remedies and, alternatively, that they are entitled to qualified immunity. ECF No. 23 at 5, 10. Whether Reed exhausted his administrative remedies is a threshold issue. *See United States v. Morfin-Rios*, 2023 U.S. Dist LEXIS 116878, at *3 (S.D. Cal. July 5, 2023) ("As a threshold matter, the Court must determine whether Defendant has administratively exhausted his claim[.]"). Therefore, I address it first.

Reed filed three grievances related to these allegations: grievance 2006-31-39532, grievance 2006-31-45625, and grievance 2006-31-45626. ECF No. 23 at 7–9.

    1.  *Grievance 2006-31-39532*

Reed filed grievance 2006-31-39532 on April 23, 2022, and it was denied and returned to him on August 22, 2022. Grievance 2006-31-39532, Defs.' Ex. L, ECF No. 23-12 at 11. Defendants argue that Reed failed to properly exhaust his administrative remedies because he failed to follow proper protocol and attach necessary documents to his grievances. ECF No. 23 at 7–8; Defs.' Ex. K, ECF No. 23-11 at 16. Specifically, he failed to attach "Form DOC-3026, Inmate Property Claim Form," which must be attached to all grievances that include monetary damages or restitution. *Id.*; *see* NDOC admin. reguls. 711 inmate personal property, Defs.' Ex. A, ECF No. 23-1 at 8 ("It is the inmate's responsibility to file an inmate grievance along with the Inmate Personal Property Claim Form DOC-3026."). Defendants concede that their response to Reed was overdue and that he was authorized to file a first-level grievance pursuant to AR 740.03. ECF No. 23 at 9. However, defendants point out that AR 740.03(9) states, "[a]n overdue grievance response at any level, is not an automatic finding for the offender" and that both the first-level rejection and the late rejection of the informal grievance inform Reed that he failed to attach the necessary forms to his grievance. *Id.* at 10; *see* ECF No. 23-3 at 6; Informal grievance rejection, Defs.' Ex. L, ECF No. 23-12 at 11; First level grievance rejection, ECF No. 23-12 at 2.  In

5

response, Reed argues that the informal grievance was improperly denied because he did not receive a response to it until long after the forty-five-day required response time, and per AR 740, this grievance was allowed to move to the next level. ECF No. 26 at 2. He argues that his "improper" denial made the grievance procedure effectively unavailable to him. *Id.* at 3. In their reply, defendants assert that, despite the overdue response, each time his grievances were rejected, Reed was provided a rejection memo explaining the deficiencies in his grievances and instructions on how to remedy the issue. ECF No. 28 at 2. Further, defendants point out that after informing Reed that he had one final opportunity to correct the errors identified in the rejection memo or else the matter would be considered abandoned, he did not file any additional grievances on the issue. *Id.*; ECF No. 23-11 at 17 ("You have one final time to correct these errors. If deficiencies are not corrected, this matter will be considered abandoned.")

   I find that Reed has failed to demonstrate that he properly exhausted his administrative remedies as to grievance 2006-31-39532. The pleadings demonstrate that in each of the rejections of Reed's grievances, he was informed that he had not attached the proper documents and was instructed to re-file with the proper documents attached. *See, e.g.*, ECF No. 23-12 at 2 (denying first level grievance) ("ALL **documentation** . . . must be submitted at this level . . . please correct and resubmit[.]") (emphasis in original). Despite this, Reed failed to file a grievance with the proper documentation.

   Reed argues that the grievance process was "unavailable to him" and thus the requirement should be waived. ECF No. 26 at 3. Indeed, a court may waive the mandatory exhaustion requirement of the PLRA when there is a "genuine dispute that the grievance procedure was effectively unavailable to them." *Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)). The Supreme Court has delineated three ways in which the grievance process can be deemed effectively "unavailable": (1) the process operates as a dead end, with officers unable or unwilling to provide relief; (2) the process is so "opaque" that inmates are unable to use it; or (3) prison officials prevent offenders

6

from using the process through machination, misrepresentation, intimidation. *Ross*, 578 U.S. at 644–65. Here, a review of the pleadings demonstrates that the overdue response to his informal grievance did not render the process unavailable. First, the process cannot be said to operate as a dead end because Reed failed to provide the required documentation the prison officials needed to review his grievance. Therefore, the prison officials were not merely unwilling to provide relief. Second, the process cannot be said to be so opaque that Reed was unable to use it because prison officials explained the issue with his grievance and provided him numerous opportunities to remedy it. Further, when Reed continued to incorrectly file his grievance, he was warned that if he did not properly file the grievance the next time, it would be deemed abandoned. Third, Reed does not allege that any prison officials used machination, misrepresentation, or intimidation to prevent him from using the process. Therefore Reed has not demonstrated that there is a genuine dispute as to whether the grievance procedure was unavailable to him and I find that, even in the light most favorable to him, Reed did not properly exhaust his administrative remedies as to this grievance.

### 2. Grievances 2006-31-4562 and 2006-31-45626

Regarding grievances 2006-31-45625 and 2006-31-45626, defendants argue that Reed did not properly exhaust his administrative remedies because he did not wait to receive a response at the second level of the grievance process before filing the instant lawsuit. ECF No. 23 at 10; ECF No. 23-11 at 5, 8. In his response Reed does not directly address these grievances. AR 740.03(7)(D) requires a grievance to be appealed to each level before the administrative remedies can be deemed exhausted. ECF No. 23-3 at 6. Because Reed did not finish the grievance procedure before filing the instant lawsuit, I find that he failed to properly exhaust his administrative remedies as to these grievances. *See, e.g.*, *Lovelady v. Beamer*, 2014 U.S. Dist. LEXIS 173930, at *6 (D. Or. Dec. 17, 2014) ("Prematurely ending the administrative process does not satisfy the PLRA exhaustion requirement[.]")

Because Reed failed to properly exhaust his administrative remedies pursuant to the PLRA, defendants' motion for summary judgment must be granted.[4] Further, because I grant defendants' motion for summary judgment on this basis, Reed's motion for summary judgment is denied accordingly.

IV. Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [ECF No. 23] is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment [ECF No. 27] is DENIED.

Dated: January 22, 2025

_____
Cristina D. Silva
United States District Judge

---

[4] Because I grant the motion based on Reed's failure to exhaust, I do not address the merits of whether defendants were entitled to qualified immunity.